UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────┐
│ USDC SDNY                   │
│ DOCUMENT                    │
│ ELECTRONICALLY FILED        │
│ DOC #: _____ │
│ DATE FILED:  4/13/2022      │
└─────────────────────────────┘
```

M.C.,

                        Plaintiff,

    -against-

COUNTY OF WESTCHESTER, NEW YORK;
ADA HUANG; GERMAINE JACQUETTE; and
SHERLITA AMLER,

                        Defendants.

16-cv-3013 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff M.C. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983") against the County of Westchester, New York, Sherlita Amler, Ada Huang, and Germaine Jacquette, (collectively, the "Defendants") for claims arising from alleged retaliation in violation of the First Amendment and abuse of process.[1]  (ECF No. 155.)  Trial is scheduled to begin on April 25, 2022.  In anticipation, both parties have filed pre-trial motions *in limine*.  (ECF Nos. 174; 177; 179; 181; & 184.)  For the following reasons, the parties' motions are GRANTED in part and DENIED in part.

## BACKGROUND

This Opinion assumes the familiarity with the underlying claims, factual allegations, and procedural history in this matter.  *See M.C. v. Cty. of Westchester*, No 16-cv-3013 (NSR), 2020 WL 7481023 (S.D.N.Y. Dec. 18, 2020).

---

[1] By Opinion and Order dated December 18, 2020, this Court granted in part and denied in part Defendants' motion for summary judgment, granting summary judgment on all of Plaintiff's claims against Westchester Medical Center and Miral A. Subhani, and Plaintiff's Section 1983 Fourth Amendment and substantive due process claims, malicious prosecution claim, and false imprisonment claims against the remaining Defendants.  (ECF No. 155).  In addition, on April 6, 2022, the Court so-ordered a stipulation dismissing all claims against Defendants Cheryl Archibald and Laurel Skelson.  (ECF No. 206.)

**LEGAL STANDARD**

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions in limine." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). An *in limine* motion is intended "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "Because a ruling on a motion *in limine* is 'subject to change as the case unfolds,' this ruling constitutes a preliminary determination in preparation for trial." *United States v. Perez*, No. 09–CR–1153 (MEA), 2011 WL 1431985, at *1 (S.D.N.Y. Apr. 12, 2011) (quoting *Palmieri*, 88 F.3d at 139).

**DISCUSSION**

Both parties have moved *in limine* to preclude certain testimonial or documentary evidence. The Court addressed the majority of the issues raised in the parties' papers on the record during the final pretrial conference held on April 8, 2022. Plaintiff's only outstanding motions include requests for an order (i) excluding evidence of events occurring prior to his April 23, 2015 arrest and involuntary hospitalization, and (ii) excluding statements by or about Dennis Paterra in relation to Plaintiff's detention and treatment. (ECF Nos. 177 & 179.) Defendants' remaining motions include requests for an order (i) excluding evidence of settlement discussions in which counsel for the County asked for a release; (ii) excluding the expert testimony of Dr. George DiFerdinando; and (iii) precluding Plaintiff from seeking monetary damages relating to his medical confinement. (ECF No. 174.) The Court will examine each in turn.

I.      **Plaintiff's Motions**

   a.  *Evidence of Events Prior to April 23, 2015*

Plaintiff first moves to preclude all evidence that predates Plaintiff's April 23, 2015 arrest and involuntary hospitalization.  (ECF No. 178.)  Specifically, Plaintiff requests the Court exclude four medical records and two administrative and judicial treatment orders that all predate April 23, 2015, and testimony from six witnesses including Dr. Ada Huang, Dr. Germaine Jacquette, Dr. Sherita Amler, Irma Cosgriff, Dr. Joseph Cooke, and Westchester County Department of Health outreach worker John Castaneda.  (*Id*. at 10.) Plaintiff avers that the only remaining claims in this case involve Defendants' decision to continue holding Plaintiff, and this evidence would be more prejudicial than probative under Rule 403 and would result in factual disputes that risk creating mini-trials within the trial that would confuse the jury.  (*Id*. at 10-21.)  Plaintiff also avers that Rule 404 prohibits the use of this evidence to prove his propensity for later conduct.  (*Id*. at 21-23.)

In opposition, Defendants argue that Plaintiff's actions and conduct predating his arrest are clearly relevant to determine whether there is a causal connection between the filing of the notice of claim and Defendants seeking to extend his confinement.  (ECF No. 188 at 3-5.)  Defendants intend to show that the extension of Plaintiff's confinement would have been made regardless of the notice of claim, and to do so Defendants must show the jury what they reasonably believed to be Plaintiff's actions before confinement.  (*Id*. at 5-6.)

   i.  *Rule 403*

The Federal Rules of Evidence provide that only relevant evidence is admissible.  Fed. R. Evid. 402.  Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action."

Fed. R. Evid. 401(a)-(b).  Relevant evidence may still be excluded by the Court "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Though the "standard of relevance established by the Federal Rules of Evidence is not high," *United States v. Southland Corp.*, 760 F.2d 1366, 1375 (2d Cir. 1985), the Court has "broad discretion to balance probative value against possible prejudice" under Rule 403.  *United States v. Bermudez*, 529 F.3d 158, 161 (2d Cir. 2008).

Here, the Court holds that the probative value of the pre-arrest evidence is not outweighed by any potential prejudice under Rule 403.  To succeed on his First Amendment retaliation claim, Plaintiff must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."  *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003).  However, as argued by Defendants, "where the challenged action 'is motivated by both proper and improper reasons, the action may be sustained if it would have been taken even in the absence of the improper reason.'"  *Williams v. Temple*, 349 F. App'x 594, 596 (2d Cir. 2009).  Defendants intend to show at trial that the extension of Plaintiff's detainment was sought for proper reasons, including worries about his pre-arrest behavior.  (ECF No. 188 at 3.)  As the Court held in its previous Opinion and Order, "Plaintiff rejected medical interventions on several occasions, which is probative of whether Plaintiff could be trusted to manage his illness in concert with medical professionals going forward . . . ."  *M.C.*, 2020 WL 7481023, at *12.  Evidence regarding Plaintiff's diagnosis of TB and how he responded to treatment is plainly relevant to determining whether Defendants had a reason, other than the notice of claim, to extend his confinement.  This probative value outweighs any Rule 403 factors of unfair prejudice, confusion of the issues, or misleading

4

the jury.  Any factual issues surrounding Plaintiff's efforts to diagnose and treat his condition shall be determined by the jury.

  *ii. Rule 404*

  Evidence of a party's character trait or other bad acts or conduct are typically sought to be introduced pursuant to Rule 404.  Rule 404(a) states that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."  Fed. R. Evid. 404(a)(1).  Rule 404(b) provides in relevant part, that:

> Evidence of other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Fed. R. Evid. 404(b)(1)-(2).  To determine the admissibility of evidence of other crimes, wrongs or acts under Fed. R. Evid. 404(b), the Court conducts a three-part inquiry.  *Huddleston v. United States*, 485 U.S. 681, 691 (1988).  A reviewing court must consider whether the evidence (1) is offered for a proper purpose; (2) is relevant to a material issue in dispute; and (3) has probative value such that it substantially outweighs its prejudicial effect.  *Id*. at 691–92.  If after conducting the relevant inquiry the evidence is deemed admissible, the Court shall give an appropriate limiting instruction to the jury, if requested by the party opposing its admission.  *Id*.

  Here, the Court holds that Rule 404 does not prevent evidence of Plaintiff's pre-arrest behavior from being admitted.  The evidence will be offered for a proper purpose—to show Defendants' reasoning as to *why* they sought to continue Plaintiff's confinement.  As Defendants argue, they intend to present the evidence to the jury to show that Plaintiff's prior actions

influenced the Defendants' decisions.  (ECF No. 188 at 12.)  Therefore, the evidence will not be used to show Plaintiff's propensity to act consistent with any character trait or prior acts.

Accordingly, evidence of Plaintiff's pre-arrest actions will be admissible.  The Court will provide a limiting instruction to the jury to prevent any improper inference be drawn from this evidence.

### b.  Statements Made by Dennis Paterra

Plaintiff next requests the Court preclude Defendants from introducing statements made by or about Dennis Paterra, Plaintiff's legal guardian.  (ECF No. 180.)  The testimony focuses on Paterra's comments and demeanor to medical professionals, and generally describes him as "hostile" or "angry."  (*Id*. at 6-7.)  Plaintiff argues these statements are inadmissible under Rule 403 as well as under Rule 802 as hearsay.  (*Id*.)  In response, Defendants aver this testimony is probative as Plaintiff lacked capacity to understand his diagnosis and he was going to be living with Paterra, and therefore Paterra's views and demeanor are relevant to the Defendants' treatment of Plaintiff.  (ECF No. 186 at 3-4.)

First, while the Court agrees that Paterra's views about Plaintiff's disease and treatment are probative, comments about his demeanor are not, and the prejudicial nature of these comments would outweigh any probative value.  Therefore, statements about Paterra's demeanor are inadmissible under Rule 403.  Other statements about Paterra's views regarding Plaintiff's care are probative and therefore admissible under Rule 403.

Second, the statements within the medical records are not hearsay.  Under Federal Rules of Evidence 801 and 802, hearsay is not admissible if offered to prove the truth of the matter asserted in the statement.  Further, when a party intends to submit an out of court document which itself contains out of court statements, the party must resolve each level of hearsay.  *See Rodriguez*

*v. Modern Handling Equip. of NJ, Inc*., 604 F. Supp. 2d 612, 622 (S.D.N.Y. 2009) ("Double hearsay is not admissible unless each level of hearsay is covered by an exception to the hearsay rule.").  Here, Defendants aver that the statements about Paterra are contained in business records. Business records, even if hearsay, are admissible if the following elements are met:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness . . . ; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).  Under Rule 803(6), "medical records are considered business records." *Middleton v. Rivera*, No. 05 Civ. 3145(SCR)(LMS), 2010 WL 4242852, at *8 (S.D.N.Y. Mar. 9, 2010).  "Rule 803(6) favors the admission of evidence rather than its exclusion if it has any probative value at all."  *United States v. Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010) (internal quotation marks omitted).  "'[T]he principal precondition to admission of documents as business records pursuant to Fed. R. Evid. 803(6) is that the records have sufficient indicia of trustworthiness to be considered reliable.'"  *Elsevier B.V. v. UnitedHealth Grp., Inc*., 784 F. Supp. 2d 286, 292 (S.D.N.Y. 2011) (quoting *Potamkin Cadillac Corp. v. B.R.I. Coverage Corp*., 38 F.3d 627, 632–33 (2d Cir. 1994)).

Plaintiff argues that the statements about Paterra within the business records consist of double hearsay, and therefore must still be excluded.  (ECF No. 199 at 3.)  However, Defendants aver that the statements within the records are being offered to show their effect on Defendants, not to prove Paterra acted a certain way or made certain statements.  (ECF No. 186 at 3.)  "Where statements are offered to show their effect on a listener's state of mind, they are not hearsay." *Denigris v. New York City Health & Hosps. Corp*., 552 F. App'x 3, 6 (2d Cir. 2013); *see also*

*Walker v. Kubicz,* 996 F. Supp. 336, 340 (S.D.N.Y. 1998) (holding although prison physician's statement of nephrologist's opinion was inadmissible to prove truth of matter asserted, such statement was admissible to prove prison physician's state of mind as to proper treatment for inmate plaintiff).   Therefore, the Court holds that the statements about Paterra's reactions to Plaintiff's treatment within the records are not hearsay as they are not being admitted for their truth.

## II.     **Defendants' Motions**

### a.  *Evidence of Settlement Discussions*

Defendants first move for this Court to issue an order precluding evidence of settlement discussions.  (ECF No. 176.)  Specifically, Defendants aver that the June 17, 2015 email sent by Defendants' counsel offering to release Plaintiff from his involuntary hospitalization if he agreed to certain conditions, including to sign a release for his claims set forth in his notice of claim, should be precluded under Rules 408 and 407.  (*Id.* at 3.)

Under Rule 408, evidence of "conduct or a statement made during compromise negotiations about the claim" is not admissible to "prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."  Fed. R. Evid. 408(a)(2).   Plaintiff argues he seeks to offer this evidence to prove a violation of his First Amendment rights, not to prove the validity of his claims contained in the notice of claim or the invalidity of the order to show cause.  (ECF No. 195 at 2-3.)  In the Court's previous Opinion and Order, it stated that Plaintiff had provided "evidence that [] Defendants expressly conditioned their willingness to discharge Plaintiff upon his release of claims against them during discussions that occurred while he was still detained."  *M.C.*, 2020 WL 7481023, at *22.  The June 17, 2015 email is one such piece of evidence, not used to prove the validity of Plaintiff's claims within the notice

of claim, but instead to prove the causal connection between Plaintiff's notice of claim and his continued confinement.  Therefore, the evidence is admissible under Rule 408.

Rule 407 states there where "measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence; culpable conduct; a defect in a product or its design; or a need for a warning or instruction."  Fed. R. Evid. R. 407.  Defendants argue that the June 17, 2015 email should be precluded as it may allow Plaintiff to argue that "the willingness on June 16, 2015 to allow him to be released under the Medical Conditions is evidence that there was no need for the May 18, 2015 application to extend his confinement" which is essentially arguing "his harm would have been less likely to occur had Defendants taken the remedial measure of imposing the Medical Conditions in May 2015."  (ECF No. 176 at 5.)

The Court is not convinced that Rule 407 applies here.  As Defendants acknowledge, "the facts on the ground were different in June than they were in May" and therefore it is hard to understand how the June 17, 2015 email containing conditions for Plaintiff's release in June could be considered a measure taken that would have made an earlier injury or harm less likely to occur.  (ECF No. 196 at 4.)  While Plaintiff is trying to prove that he should have been released by Defendants earlier, the fact that Defendants provided several medical conditions in June does not prove that these same conditions could have been made in May and could have prevented Plaintiff's harm.

Defendants lastly argue that the statements made in the email, sent by the County Attorney's Office, cannot be imputed to the remaining Defendants.  (ECF No. 176 at 5-6.)  Defendants state that the attorney who sent the email, Castro-Blanco, was not retained by Defendants, as they are required by law to utilize the Office of the County Attorney.  (*Id*.)

However, "[s]tatements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney." *United States v. Margiotta*, 662 F.2d 131, 142 (2d Cir. 1981).   Here, it is undisputed that Castro-Blanco was retained by the individual Defendants, even if they were required by law to do so.

Accordingly, the June 17, 2015 email is admissible.  In an abundance of caution, the Court will provide a limiting instruction to the jury that states the document may not be considered to prove or disprove the validity of Defendant's allegations within the notice of claim, or as evidence that there were measures that could have been taken that would have made Plaintiff's injury or harm less likely to have occurred.

### b. *Dr. George DiFerdinando's Expert Testimony*

Next, Defendants aver that Dr. George DiFerdinando's expert testimony should be precluded under Rule 702.  (ECF No. 176 at 7.)  Plaintiff identified Dr. DiFerdinando's testimony to include "public health standards, protocols, and risk of infection related to tuberculosis treatment and TB patient confinement/isolation."  (*Id*.)  However, Defendants aver that in this Court's previous Opinion and Order, it held that Dr. DiFerdinando's expert report failed to identify medical standards and instead expressed his personal judgment.  (*Id*.)  Specifically, the Court held:

> The DiFerdinando Report does not raise a genuine issue of material fact as to whether Defendants failed to meet applicable medical standards with respect to the involuntary confinement of Plaintiff because Dr. DiFerdinando fails to identify *any* standard generally accepted in the medical community.  A review of the entire report and each of the conclusions of Dr. DiFerdinando quoted by Plaintiff as relevant to this inquiry reveals that Dr. DiFerdinando never purports to define any generally accepted standard and that each of his conclusions were made without reference to an operative accepted medical standard.

*M.C.*, 2020 WL 7481023, at \*18.  In response, Plaintiff argues that the Court only addressed Dr. DiFerdinando's report in the context of Plaintiff's substantive due process claim, which requires expert testimony regarding applicable medical standards.  (ECF No. 195 at 8-9.)

The testimony of an expert at trial must be reliable and relevant.  The standards governing the admissibility of expert testimony are set forth in Rule 702, which provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion" if four conditions are met: (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (2) "the testimony is based on sufficient facts or data"; (3) "the testimony is the product of reliable principles and methods"; and (4) "the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.

This rule imposes a "gatekeeping" function upon courts, meaning that courts must ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 597 (1993).  Even so, the standard for admissibility under Rule 702 is "liberal" and represents "a more permissive approach to expert testimony." *Nimely v. City of New York*, 414 F.3d 381, 395–96 (2d Cir. 2005).  In fulfilling their gatekeeping function, courts "must determine 'whether the proffered testimony has a sufficiently 'reliable foundation' to permit it to be considered.'" *Amorgianos v. Amtrak*, 303 F.3d 256, 265 (2d Cir. 2002) (quoting *Campbell v. Metro. Prop. & Cas. Ins. Co*., 239 F.3d 179, 184 (2d Cir. 2001)).

Defendants aver that Dr. DiFerdinando's failure to identify medical standards shows that his opinion lacks foundation.  (ECF No. 176 at 7-8.)  The Court agrees.  While the Court's previous Opinion and Order only analyzes Dr. DiFerdinando's report in evaluating Plaintiff's previous substantive due process claim, the Court still concluded that Dr. DiFerdinando's report failed to include *any* standard generally accepted in the medical community.   Therefore, Dr. DiFerdinando has failed to show his expert opinions are a product of reliable principles and methods, and

11

therefore do not rest on a reliable foundation.  Accordingly, Dr. DiFerdinando's opinion testimony will be precluded.

      *c.   Monetary Damages Relating to Medical Confinement*

Lastly, Defendants request the Court preclude Plaintiff from requesting a specific amount of damages, and any damages from prior to May 23, 2015.  (ECF No. 176 at 10-11.)  Although the Second Circuit has cautioned against this practice, stating "specifying target amounts for the jury to award is disfavored," *Consorti v. Armstrong World Indus.*, 72 F.3d 1003, 1016 (2d Cir. 1995), *vacated on other grounds*, 518 U.S. 1031 (1996), the determination of whether to allow a plaintiff to request a specific amount of damages from the jury is within the Court's discretion.  *See Lightfoot v. Union Carbide Corp*., 110 F.3d 898, 912 (2d Cir. 1997) ("It is best left to the discretion of the trial judge, who may either prohibit counsel from mentioning specific figures or impose reasonable limitations, including cautionary jury instructions.").  Therefore, the Court holds that Plaintiff's counsel will be permitted to suggest a specific amount of non-lost wage damages during closing statements.  However, Plaintiff's counsel must notify Defendants' counsel of the specific amount before closing statements begin, in order to allow Defendants to respond if they choose to do so.

In addition, the Court will preclude Plaintiff from seeking damages for the events prior to the date that Defendants became aware of the notice of claim.  The only remaining claims are for retaliation and abuse of power relating to the extension of Plaintiff's confinement.  Any alleged damages related to Defendants' conduct before they became aware of the notice of claim are therefore irrelevant and inadmissible.[2]

---

[2] Defendants also appear to argue that Plaintiff should be precluded from seeking compensatory damages relating to his confinement as the Court previously ruled that "the superseding cause of Plaintiff's detention was his consent to continued confinement."  (ECF No. 176 at 10.)  While Defendants appear to abandon this argument in their reply, the Court will deny the request as this holding only applies to the extensions to Plaintiff's confinement

## CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion to preclude all evidence that predates Plaintiff's April 23, 2015 arrest and involuntary hospitalization, (ECF No. 178) and GRANTS in part and DENIES in part Plaintiff's motion to preclude the introduction of statements made by or about Dennis Paterra, (ECF No. 179.)  The Court DENIES Defendants' motion for an order precluding evidence of settlement discussions, GRANTS Defendants' motion to preclude Dr. George DiFerdinando's expert testimony, and GRANTS in part and DENIES in part Defendants' motion to preclude Plaintiff from requesting a specific amount of damages and any damages from prior to May 23, 2015.  (ECF No. 174.)  The Court addressed the rest of the parties' motions on the record during the final pretrial conference held on April 8, 2022.  (ECF Nos. 177, 181, and 184.)

The Clerk of the Court is respectfully directed to terminate the motions at ECF Nos. 174, 177, 179, 181, and 184.


Dated:   April 13, 2022                                    SO ORDERED:
         White Plains, New York

                                        _____
                                              NELSON S. ROMÁN
                                           United States District Judge

---

due to court adjournments, only relevant to Plaintiff's previous Fourth Amendment and malicious prosecution claims.